**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **AMANDA FLOYD** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| **v.** | )      **CIVIL ACTION NO.:** |
| | ) |
| **COASTAL SERVICE EXPRESS,** | ) |
| **INC. D/B/A QUICK DELIVERY** | )      **JURY DEMAND** |
| **SERVICE,** | ) |
| | ) |
| **DEFENDANT.** | ) |

**COMPLAINT**

## I.    INTRODUCTION

1.    This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through Title VII of the Civil Rights Act of 1964, as amended, including the Civil Rights Act of 1991, 42 U.S.C. Section 1981a; the Pregnancy Discrimination Act, Section 701(k) and the Pregnant Workers Fairness Act (PWFA).

## II.    JURISDICTION, VENUE AND ADMINISTRATIVE PREREQUISITES

2.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Venue is proper in the Southern District of Alabama under 28 U.S.C. §1391(b), and the Southern Division pursuant to Title VII's venue provision, 42

1

U.S.C. § 2000e-5(f).

3.     Plaintiff, Amanda Floyd, has fulfilled all conditions precedent to the institution of this action under Title VII. Plaintiff timely filed her charge of discrimination on May 22, 2025, which was within 180 days of the occurrence of the last discriminatory acts she endured. Plaintiff is filing this lawsuit within 90 days of receipt of her Right-To-Sue Letter from the Equal Employment Opportunity Commission, which was issued on May 8, 2026.

## III.    PARTIES

4.     Plaintiff, Amanda Floyd (hereinafter "Plaintiff") is a citizen of the United States and is over nineteen (19) years of age.

5.     Defendant, Coastal Service Express Inc. (hereinafter "Defendant") d/b/a Quick Delivery Service is an entity subject to suit under Title VII. Defendant employs at least fifteen (15) persons.

## IV. STATEMENT OF FACTS

6.     Plaintiff began working for Defendant on or around February 3, 2035 as a Team Driver with her partner James "Billy" Derouin in Defendant's Hot Shot Mobile ("HSM") department under a guaranteed pay arrangement at Defendant's location in Mobile, Alabama.

7.     Plaintiff drove 18-wheel flatbed trucks over the road and her supervisor and dispatcher was Terry Harper.

8.    Around the middle of March 2025, Plaintiff informed Mr. Harper that she was approximately 9 weeks pregnant.

9.    Harper told Plaintiff that he may have to separate her from her team drive with Billy Derouin (also her fiancé), with Billy continuing to drive flatbeds while Plaintiff would drive dry vans and container loads.

10.    Those trucks are just as large as the flatbeds, but they don't require heavy lifting of the tarps required for flatbeds.

11.    Plaintiff told Harper it would not be an issue to separate her and Billy.

12.    About 2 weeks later, Harper separated Plaintiff and Billy, and Plaintiff began running container and dry van loads.

13.    Plaintiff had to take a day off work for a doctor's appointment for an ultrasound to check on the status of her pregnancy and the health of the baby.

14.    Harper had to leave for a week in late April for his father's funeral and another person named Jen replaced him as dispatcher.

15.    Jen tried to assign Plaintiff to handle flatbeds by herself, but Plaintiff explained to Jen that she could not run a flatbed alone because she was pregnant and the lifting requirements on handling the flatbed by herself was too much physical exertion during her pregnancy.

16.    Jen assigned Plaintiff on a van load, told her they had hired another driver, and she and Billy would run loads together.

17.     It was not an issue for Plaintiff to run flatbeds teaming with Billy because he could handle the heavy lifting.

18.     Harper returned as dispatcher/supervisor and Billy and Plaintiff continued to run loads together as a driving team.

19.     In May, Harper instructed Billy to handle a dry van load, and Harper told Plaintiff to stay home because it was a one-man job.

20.     Plaintiff and Billy were assigned a run to Chicago to take on May 12, 2025, and Harper told Plaintiff and Billy to meet with him before they left.

21.     Plaintiff and Billy met with Harper in the safety department meeting room and advised them that they would be taken off their weekly guaranteed pay, which was $1,000 a week or 30% of the load, whichever was greater.

22.     On May 12, 2025, Harper told Plaintiff and Billy that after this Chicago run, they were no longer able to guarantee Plaintiff's pay.

23.     Harper told Plaintiff when she returned from Chicago that she was no longer needed at the company and they were letting her go, terminating her employment.

24.     Harper told Plaintiff there was not enough freight to keep her employed, but Plaintiff knew that was false as there was plenty of freight to keep her busy.

25.      Plaintiff received a separation notice on May 22, 2025, signed by Terry Harper, Supervisor/Manager, stating "driver was hired to do flatbed work and employee informed employer that she can no longer perform that duty."

26. This reason is false, as Plaintiff could continue running flatbeds teamed with Billy, plus there were plenty of other driving jobs available for Plaintiff to handle during the remainder of her pregnancy.

27. In response to Plaintiff's EEOC Charge, Defendant falsely alleged Plaintiff had resigned her employment.

28. Defendant further stated in response to the EEOC as follows: "When being informed of not being able to perform flatbed job duties she was offered her dry van and container loads as an accommodation. The accommodations offered by the Company apparently were not acceptable to Ms. Floyd."

29. Defendant did not offer Plaintiff the accommodation of handling dry van and container loads in lieu of termination, because had Defendant offered that to Plaintiff she would have taken that work.

30. Plaintiff never indicated that the accommodation of handling dry vans and container loads were not acceptable as Defendant had falsely stated to the EEOC.

31. The same day Defendant fired Plaintiff, Defendant posted other driver jobs that Plaintiff could handle during her pregnancy.

32. Defendant's articulated reasons for the above stated adverse employment actions are not legitimate, and Defendant's stated reasons are a pretext created to hide the fact that it terminated Plaintiff because of her sex/pregnancy and because it did not want to accommodate Plaintiff for her pregnancy.

33.    In the alternative, even if Defendant had a legitimate reason for terminating Plaintiff, her sex/pregnancy remained at least a motivating factor in the termination decision.

34.    Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

35.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or front pay, backpay, declaratory judgment, injunctive relief, compensatory, and punitive damages is her only means of securing adequate relief.

36.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## V. CAUSES OF ACTION

**COUNT I – Terminating Plaintiff because of her Pregnancy in violation of the Pregnancy Discrimination Act.**

37.    Defendant discriminated against Plaintiff based on her sex/pregnancy by taking adverse employment actions against her, including terminating her.

38.    Defendant's articulated reasons for taking the adverse employment actions described in the facts of this complaint, including terminating Plaintiff, are pretextual and not legitimate; in the alternative, Plaintiff may prevail under a mixed-

motive theory, as even if Defendant had legitimate reasons for terminating her, sex/pregnancy was at least a motivating factor in the adverse employment actions Defendant took against her.

39.    Said discrimination was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

40.    Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for reinstatement or frontpay, backpay, declaratory judgment, injunctive relief, and the damages sought in this complaint are her only means of securing adequate relief.

41.    Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

**B.    COUNT II – Violation of the Pregnant Workers Fairness Act by Failing to Reasonably Accommodate Plaintiff and Taking Adverse Employment Actions Against Her.**

42.    Defendant refused to provide reasonable accommodations related to Plaintiff's pregnancy and instead terminated her.

43.    Defendant refused to accommodate Plaintiff's pregnancy by allowing her to continue performing jobs she could do during her pregnancy.

44.    Defendant cannot demonstrate that accommodating Plaintiff would impose an undue hardship on the operation of its business.

7

45.    Defendant took adverse employment actions against Plaintiff on the account of Plaintiff requesting a reasonable accommodation related to her pregnancy.

46.    Defendant's decision to terminate Plaintiff to avoid accommodating her pregnancy violated the Pregnant Workers Fairness Act.

47.    Defendant has failed to articulate a legitimate, nondiscriminatory reason for the failing to accommodate Plaintiff's pregnancy. In the alternative, and any reasons put forth by Defendant for failing to accommodate Plaintiff's pregnancy are pretextual.

48.    As a result of Defendant's failure to accommodate Plaintiff's pregnancy, Plaintiff has suffered monetary damages including lost wages, and non-economic compensatory damages including, pain, humiliation, mental anguish, and suffering and punitive damages.

## VI. DAMAGES

49.    Plaintiff is now suffering and will continue to suffer irreparable injury from

50.    Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

51.    Plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of Defendant's unlawful conduct.

52.    Plaintiff has no plain, adequate or complete remedy at law to redress the

wrongs alleged herein and this suit for reinstatement or front pay, backpay, declaratory judgment, injunctive relief, compensatory and punitive damages is her only means of securing adequate relief.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.     Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of Defendant are violative of the rights of Plaintiff as secured by Title VII, the PDA and the PWFA.

2.     Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII.

3.     Enter an Order requiring Defendant to make Plaintiff whole by awarding her reinstatement or front pay, backpay, compensatory, punitive, and/or nominal damages.

4.     Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses and post judgment interest.

Plaintiff Demands a Trial by Struck Jury on All Issues Triable by a Jury.

Respectfully submitted,

/s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-f58j
L. William Smith asb-8660-a61s
Christina M. Malmat asb-1214-y44q
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500